U.S. DISTRICT COURT FOR THE WESTERN
DISTRICT OF NORTH CAROLINA

FILED
CHARLOTTE, N.C.

JUL 23

U.S. DISTRICT COURT
W. DIST. OF N.C.

| | |
|---|---|
| FC NUTMEG, INCORPORATED, d/b/a )<br>INTEGRITY SPORTS MARKETING, )<br>MEDIA & MANAGEMENT )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JACK WARNER, CARIBBEAN )<br>FOOTBALL UNION, J.D. )<br>INTERNATIONAL )<br>)<br>    Defendants. ) | Case No. 3:04CV 359-H<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

NOW COMES the Defendants Jack Warner (hereinafter "Warner") Caribbean Football Union (hereinafter "CFU") and J.D. International, by and through its attorneys, John P. Collins of Law offices COLLINS & COLLINS, and Christian R. Troy of the law offices of TROY & WATSON and as for its Notice for Removal pursuant to 28 U.S.C. §1446 states as follows:

1. The Plaintiff has filed a three count Complaint against Defendants in the Superior Court Division of Mecklenburg County, North Carolina, case number 04-CVS-7175. Attached are copies of all process, pleadings and orders served upon Defendants in this action.

2. Jurisdiction in the U.S. District Court for the Western District is proper by virtue of diversity of citizenship and amount in controversy.

3. Title 28, Part IV, Chapter 85, Section 1332 (a) of the United State Code states that:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-

(1) Citizens of a different State

(2) Citizens of a state and citizens of a foreign state;

(3) Citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) A foreign state, as plaintiff and citizens of a State or different States.

4. Under Title 28, Part IV, Chapter 85, Section 1332(c), a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.

5. The Plaintiff is requesting relief in an amount an excess of $100,000 plus interest, and costs and expenses including attorney fees.

6. Plaintiff is a North Carolina corporation with its principal place of business in Davidson, North Carolina.

7. Defendant Jack Warner is a resident of Trinidad and Tobago, West Indies.

8. Defendants J.D. International and CFU are headquartered in Port of Spain, Trinidad, West Indies.

9. This Notice of Removal of a civil action or proceeding is filed within thirty (30) days after the receipt by the Defendants, thorough service or otherwise, of a copy of the initial pleading setting forth the claims for relief upon which such action or proceeding is based.

10. Defendants' appearance in this case is limited solely for purposes of contesting jurisdiction.

11. Additionally Defendants' reserve the right to quash service.

- 2 -

Case 3:04-cv-00359-CH   Document 1   Filed 07/23/04   Page 2 of 15

12. By service of this Notice of Removal, the Defendants are giving written notice of the removal of this action to all parties and are filing a copy of the Notice with the Clerk of the State Court for Mecklenburg County.

WHEREFORE, the Defendants pray that this court grant removal of the above captioned case to Federal Court, and for such other relief as this court may deem proper.

Respectfully submitted,

_____
Christian R. Troy
N.C. State Bar #8064
Troy & Watson
301 McDowell Street
Suite 1014
Charlotte, North Carolina 28204
(704)334-8889

*Of Counsel:*

John Collins
Collins & Collins
332 South Michigan Avenue
Suite 605
Chicago Illinois 60604
(312)663-4200

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the above and foregoing *Defendants' Notice of Removal to Federal Court* has been served, via United States First Class Mail, on the following parties to this action:

M. Todd Sullivan
Womble Carlyle Sandridge & Rice, PLLC
P.O. Box 831
Raleigh, NC 27602
*Attorney for Plaintiffs*

On this the 23rd day of July, 2004.

Christian R. Troy

- 4 -

NORTH CAROLINA                          IN THE GENERAL COURT OF JUSTICE
                                                                    SUPERIOR COURT DIVISION
MECKLENBURG COUNTY                  04 APR 19 PM 2:13    2004 CVS 7175

FC NUTMEG, INCORPORATED, d/b/a INTEGRITY )
SPORTS MARKETING, MEDIA & MANAGEMENT )
                                           )
         Plaintiff,                            )
                                           )
v.                                             )           **COMPLAINT**
                                             )       **JURY TRIAL DEMANDED**
JACK WARNER, CARIBBEAN FOOTBALL    )
UNION, J.D. INTERNATIONAL              )
                                            )
         Defendants.                      )
                                            )

NOW COMES Plaintiff, FC NUTMEG, INCORPORATED, by and through its undersigned counsel, and alleges as follows:

### Summary of the Action

1. This is an action by FC Nutmeg, Incorporated, ("FC Nutmeg"), a sports marketing and management agency, against the persons and entities owning and/or controlling the exclusive television and radio rights in the Caribbean region to certain key soccer matches, including the FIFA World Cups and FIFA Additional Events. Those persons and entities, the defendants herein are the Caribbean Football Union ("CFU"), J.D. International, and Jack Warner ("Warner"), the President of the CFU and an officer of J.D. International. Those defendants, through Warner, contracted with FC Nutmeg to act as a management consultant in contract renegotiations for its football television properties and to distribute the television broadcasts to licensed territories throughout the Caribbean region for the 2003 FIFA Additional Events, with full payment due at the end of 2003. After FC Nutmeg completed all necessary work as agreed, defendants refused to make any payments due and denied any agreement for services rendered by FC Nutmeg. FC Nutmeg is seeking damages (including treble and punitive damages) and other relief from

1

Case 3:04-cv-00359-CH    Document 1    Filed 07/23/04    Page 5 of 15

defendants for (1) Breach of Contract (2) Unfair and Deceptive Trade Practices and (3) Quantum Meruit.

## The Parties

2. Plaintiff FC Nutmeg, Incorporated, ("FC Nutmeg") is a North Carolina corporation with its principal place of business in Davidson, North Carolina. FC Nutmeg is a sports marketing and management agency doing business as Integrity Sports Marketing, Media & Management or IS3M. FC Nutmeg creates markets and executes on strategies for corporations and sports organizations with an emphasis on soccer.

3. Defendant Jack Warner ("Warner") is a resident of Trinidad and Tobago, West Indies, and serves as (1) the Vice-President of the Fédération Internationale de Football Association ("FIFA") the worldwide governing body for the sport of soccer, (2) the President of the Confederation of North, Central American and Caribbean Association Football (CONCACAF) which is a Confederation under the FIFA umbrella, (3) the President of the Caribbean Football Union (CFU) and (4) owner and officer of J.D. International.

4. Defendant J.D. International ("J.D. International") is a company that has been set up by the Defendant to obscure and obfuscate the nature and location of certain rights and assets acquired by Defendant, including the broadcast rights at issue here. On information and belief, J.D. International is an alter ego and instrumentality of Warner and the Caribbean Football Union.

5. Defendant Caribbean Football Union ("CFU") is a confederation of 25 football playing national governing bodies in the Caribbean region which is a subsection of CONCACAF and is controlled and administered by the Defendant and headquartered in his offices at CONCACAF in Port of Spain, Trinidad, WI. On information and belief, CFU is an alter ego and instrumentality of Warner and J.D. International.

2

## Background

6. In 4th Quarter of 2001 the Defendant purchased the exclusive television and radio rights in the Caribbean region for the 2002 FIFA World Cup, the 2006 FIFA World Cup and the FIFA Additional Events in the interim years of 2003-2005. Defendant purchased these rights from KirchMedia GmbH & Co. KgaA, ("KirchMedia") a German company. The worldwide representative of the international rights is now Infront Sports & Media AG ("Infront"), a Swiss-based subsidiary which purchased KirchMedia in a management-supported buyout in 2002. KirchMedia, now Infront, was granted the exclusive television and radio exploitation rights by FIFA, the international governing body of the sport of association football which has the right to sanction and to stage football events and to license all broadcasting rights to such events. Because of the popularity of soccer in the region, the value of the FIFA World Cup broadcast rights in the Caribbean is exceptionally large and eclipses all other sports television rights in the region.

7. Upon information and belief, the rights for FIFA-oriented television to the Caribbean for the period 2002-2006 were initially awarded in 2001 by the preceding rightsholder ISMM AG (ISMM) of Lucerne, Switzerland to the Caribbean Sports Television Network (CSTN), a company controlled by Mr. Selby Browne. Upon the subsequent bankruptcy and dissolution of the rights and assets of ISMM, the FIFA broadcast rights to the Caribbean reverted back to FIFA, which in turn awarded same to Warner who purchased these rights in his name. However, due to multiple lawsuits brought forward by Mr. Browne and CSTN and with sensitivity to the obvious conflicts of interest related to a FIFA rightsholder (KirchSport, then Infront) tendering sublicensed rights to an executive of FIFA, Warner transferred ownership to J.D. International and later to the CFU. Defendant in turn sublicensed these rights to certain broadcasters in the Caribbean and South America.

3

8. In January, 2002, Warner approached the president of FC Nutmeg, Spence G. Millen, to request assistance with the distribution and coordination of the sub-licensed television rights for the 2002 FIFA World Cup Korea/Japan™. Defendant and Plaintiff entered into an oral agreement with FC Nutmeg whereby FC Nutmeg would provide consulting services for the distribution of these rights to the sub-licensed broadcasters in the Caribbean. Warner agreed to a payment of $87,500 plus expenses. Millen provided a document detailing the terms of this relationship to Warner, but no written contract was ever executed.

9. Pursuant to that agreement, FC Nutmeg provided the agreed-upon consulting for the 2002 FIFA World Cup. This included sending a team to Japan and Korea to oversee the distribution of the broadcast signal to the sublicensed broadcasters in the various countries in the Caribbean.

10. FC Nutmeg was paid the full consulting fee in installments according the terms of the parties' agreement. The final installment of $21,875 was paid in July of 2002. The expenses for the contract were paid over the course of the year with the remaining $4500 in expenses paid in January of 2003, approximately six months after the conclusion of the 2002 World Cup.

11. In October of 2002, FC Nutmeg again began working with and for Warner at his request in renegotiating his contract with Infront for the cost of the remaining events, including the 2006 World Cup. To facilitate this renegotiation, and at the request of the Warner, Millen flew with Warner to Zurich, Switzerland on or about 27 October, 2002. FC Nutmeg was not then compensated for this work beyond travel expenses, paid in January 2003.

12. FC Nutmeg continued to work with Warner, at his request, to renegotiate the contract with Infront, including a trip to Port of Spain, Trinidad, compilation of materials, and summation of negotiating points for which FC Nutmeg was again reimbursed only travel expenses. The contract renegotiation with Infront was successfully completed in February of 2003 and resulted

in savings to Warner of upwards to $950,000 over the remainder of the contract between the CFU and Infront.

## The Agreement for the 2003 FAEs

13. In 2003, FIFA staged four FIFA Additional Events ("2003 FAEs") which included the FIFA World Youth Championship in the United Arab Emirates, the FIFA Confederations Cup in France, the FIFA U17s World Championship in Finland and the Women's World Cup in the United States. Warner's contract with Infront licensed the broadcast distribution of all 2003 FAEs.

14. In October of 2002, Warner and Millen began discussing compensation for the continuing work on the renegotiation of the Infront contract and FC Nutmeg providing the consulting necessary for the distribution of the 2003 FAEs to the Caribbean sub-licensees, similar to the work done for the 2002 FIFA World Cup. It was then determined that time was of the essence as it related to the immediate need to renegotiate the KirchSport contract and that the two parties would determine at a later date the full scope of compensation due FC Nutmeg for those services rendered as well as services which would need to be rendered throughout 2003 related to the FIFA broadcasts for the year.

15. On or about February 1, 2003, Warner asked FC Nutmeg to provide a proposal for all services related to the work to-date regarding the KirchSport (Infront) contract renegotiation as well as the upcoming distribution for the FIFA broadcasts throughout 2003. FC Nutmeg again provided a document requesting compensation of $120,000 plus travel expenses to be paid quarterly throughout 2003.

16. On or about February 24, 2003, Warner responded by email asking FC Nutmeg to lower the amount for the consulting fees and requested a delay of payment until the end of the 2003 calendar year.

5

17. On or about February 27, 2003, Millen, by email, agreed to accept the delay of payment request until December 1, 2003 and reduced the consulting fee by $20,000. On the same day, Warner responded by email acknowledging with thanks the amended terms and requesting FC Nutmeg draft and send an appropriate contract. No further terms were negotiated between the parties.

18. The final terms agreed to were for a payment of $100,000, inclusive of expenses, unless previously agreed upon, payable on December 1, 2003. A letter detailing the terms was sent to Warner by email, facsimile and Federal Express.

19. FC Nutmeg, at Warner's request and with his knowledge and consent, continued to work with respect to the contract as had become customary in their relationship. To fulfill the contract, Millen traveled to the events in France and Finland and was scheduled to travel to the event in the United Arab Emirates until its postponement due to the war in Iraq. According to the parties' agreement, FC Nutmeg completed all paperwork required by the international rightsholder, Infront, communicated with the Caribbean sub-licensees, provided satellite distribution solutions for each event and managed all known instances of signal piracy.

20. During the course of the year, FC Nutmeg communicated regularly with Warner and Warner's representatives, most specifically and frequently Ms. Cheryl Abrams, an agent and employee of Warner, who served as direct liaison to FC Nutmeg throughout the term of contract. Additionally, agents for FIFA, Infront Sports, the satellite providers and the individual Caribbean broadcast stations communicated directly with FC Nutmeg with respect to its work on behalf of Defendants.

21. Throughout the term of the contract, FC Nutmeg was reassured orally and in writing by agents of Defendants, including Ms. Abrams, that the contract between the two was being fulfilled.

6

Case 3:04-cv-00359-CH   Document 1   Filed 07/23/04   Page 10 of 15

22. Upon information and belief, Defendants anticipated selling sublicenses to more broadcast stations in the Caribbean, Central America and South America. FC Nutmeg had no responsibility for sale of those broadcast rights.

### Defendant's Failure to Perform Under its Agreement

23. In November of 2003, FC Nutmeg sent to Warner an invoice for the agreed upon amount, due in full on December 1, 2003. Additionally, FC Nutmeg sent a request for pre-approved expenses. Beginning on or about 12 November 2003, Warner indicated an unwillingness to pay for any services rendered by FC Nutmeg in 2003, including the agreed-upon expenses. Warner, moreover, for the first time denied the existence of the contract between the parties.

### FIRST CLAIM FOR RELIEF

### (Breach of Contract)

24. FC Nutmeg repeats and realleges the allegations of paragraphs 1 through 23 of the Complaint as if fully set forth herein.

25. Defendants agreed to the terms of the contract for consulting services for 2003 and knew or should have known of commencement and continuation of work in reliance of the contract.

26. By failing to pay FC Nutmeg upon complete performance of the contract, Defendants have breached the contract and are liable in damages for the full amount of the contract, including expenses.

### SECOND CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

27. FC Nutmeg repeats and realleges the allegations of paragraphs 1 through 26 of the Complaint as if fully set forth herein.

28. On information and belief, Defendants determined sometime in 2003 to not pay for the services being rendered by FC Nutmeg pursuant to the 2003 contract. Yet, Defendants continued to accept performance of the contract by FC Nutmeg. In so doing, Warner was exercising his

superior economic power, as a high soccer official in the Caribbean and, indeed, worldwide, against FC Nutmeg, a small marketing and consulting company. Alternatively, on information and belief, Warner recklessly entered into the contract when it had no basis for believing sales in the region would cover the cost of the consulting services. Failure to refuse the contract or to advise FC Nutmeg to cease working pursuant to the contract had the tendency to deceive FC Nutmeg and did deceive FC Nutmeg to continue working for Defendants even though Defendants had no intention of paying FC Nutmeg.

29. Had FC Nutmeg known that Defendants never intended to pay for the services rendered or that Defendants recklessly promised to pay when the funds would not support payment for such services, FC Nutmeg would not have incurred the cost of performance of the contract in full.

30. As a result of Defendants' false or reckless actions and statements, FC Nutmeg relied to its detriment upon such actions and statements and spent considerable amounts of time and incurred substantial expense in connection with the conract, including, but not limited to, the following:

    a. Travel to France prior to and during the 2003 FIFA Confederations Cup;

    b. Travel to Finland prior to and during the 2003 FIFA World Youth Championship;

    c. Travel to Switzerland and Trinidad to assist Defendant in renegotiation of its contract with Infront Sports, done in large part in anticipation of an agreement for work in the future;

    d. Creation and replication of a sales disk shipped to the CFU and then distributed throughout the Caribbean region.

31. Had FC Nutmeg known that Defendants never intended to pay on the contract or that Defendants recklessly entered into the contract without the funds to pay for the services, FC Nutmeg would never have expended substantial time or incurred such expense.

8

32. Defendants' actions constitute unfair and deceptive acts and practices in connection with Defendants' conduct of its business activities thereby affecting commerce and causing injury to the business of FC Nutmeg in the State of North Carolina in violation of N.C.G.S. §75-1.1. Defendants' acts and practices are also unfair and deceptive in that they constitute substantial aggravating circumstances in connection to Defendants' breach of its contract to pay for services rendered.

33. As a result of Defendants' unfair and deceptive acts and practices, Plaintiff has been injured and damaged in an amount reasonably believed to exceed $100,000.

### THIRD CLAIM FOR RELIEF
(Quantum Meruit)

34. FC Nutmeg repeats and realleges the allegations of paragraphs 1 through 33 of the Complaint as if fully set forth herein.

35. Defendants knowingly and voluntarily accepted the labor, materials, and services that FC Nutmeg provided to them. FC Nutmeg did not provide those labors, materials and services gratuitously, and the reasonable value of those labors, materials, and services is reasonably believed to be in excess of $100.000.

### Request For Relief

**WHEREFORE**, FC Nutmeg, Incorporated prays the Court that:

    A. FC Nutmeg be awarded judgment in its favor on each Claim for Relief of this Complaint;

    B. FC Nutmeg recover from Defendants the damages it proves at trial in an amount in excess of $100,000, plus interest;

    C. FC Nutmeg's damages be trebled pursuant to N.C.G.S. §75-16.

    D. FC Nutmeg recover from Defendants the costs and expenses incurred in this action, including attorney fees, pursuant to N.C.G.S. §75-16.1 or other applicable law;

    E. FC Nutmeg receive a jury trial of all issues so triable; and

F.  FC Nutmeg receive and recover such further relief as this Court may deem appropriate.

This the 16th day of April, 2004.

*Todd Sullivan* / *by MSK SBA 28571*
M. Todd Sullivan
State Bar No. 24554

OF COUNSEL:

WOMBLE CARLYLE SANDRIDGE & RICE,
*a Professional Limited Liability Company*
Post Office Box 831
Raleigh, North Carolina 27602
(919) 755-2100

Attorneys for Plaintiff
FC Nutmeg, Incorporated

| STATE OF NORTH CAROLINA | File No. 04 CVS 7175 |
|---|---|
| | Film No. |
| MECKLENBURG COUNTY | In the General Court of Justice<br>☐ District Court Division ☐ Superior Court Division |

| Plaintiff Name:<br>FC NUTMEG, INCORPORATED, d/b/a INTEGRITY SPORTS MARKETING, MEDIA & MANAGEMENT | |
|---|---|
| | **CIVIL SUMMONS** |
| **VERSUS** | GS 1A-1, Rules 3,4 |
| Defendant:<br>JACK WARNER, CARIBBEAN FOOTBALL UNION, J.D. INTERNATIONAL | *☐ Alias and Pluries Summons<br>The summons originally issued against you was returned not served. |
| | Date Last Summons Issued |
| TO: JACK WARNER | TO: |
| Name & Address of First Defendant:<br>JACK WARNER<br>Caribbean Football Union<br>113 Edwards Street<br>Port of Spain, Trinidad & Tobago<br>WEST INDIES | Name & Address of Second Defendant: |

**A Civil Action Has Been Commenced Against You!**
You are notified to appear and answer the complaint of the plaintiff as follows:
1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name and Address of Plaintiff's Attorney<br>If none, Address of Plaintiff | Date Issued: 4-19-04 | Time Issued: 2:13 ☐AM ☑PM |
|---|---|---|
| M. Todd Sullivan<br>Womble Carlyle Sandridge & Rice, PLLC<br>P.O. Box 831<br>Raleigh, NC 27602 | Signature<br>☑ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

| ☐ ENDORSEMENT<br>This summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this summons must be served is extended thirty (30) days. | Date of Endorsement: | Time:<br>☐AM ☐PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 9/96
©1997 Administrative Office of the Courts (Over)