U.S. DISTRICT COURT FOR THE WESTERN
DISTRICT OF NORTH CAROLINA

FC NUTMEG, INCORPORATED, d/b/a  )
INTEGRITY SPORTS MARKETING,     )
MEDIA & MANAGEMENT              )
    Plaintiff,                  )
                                )
v.                              )  Case No. 3:04 CV 359-H
                                )  JURY TRIAL DEMANDED
JACK WARNER, CARIBBEAN          )
FOOTBALL UNION, J.D.            )
INTERNATIONAL                   )
                                )
    Defendants.                 )

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURUSANT TO RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

NOW COMES the defendants, Jack Warner (hereinafter "Warner") Caribbean Football Union (hereinafter "CFU") and J.D. International, by and through its attorneys, John P. Collins of the law offices COLLINS & COLLINS, and Christian R. Troy of the law offices of TROY & WATSON and in support defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure states as follows:

Summary

1.    On or about April 19, 2004, the Plaintiff, FC Nutmeg Incorporated ("FC Nutmeg") filed the complaint (the "Complaint") alleging that Warner, CFU and JD International (collectively, the "Defendants") (a) breached an alleged agreement between the Plaintiff and Defendants and (b) engaged in unfair and deceptive trade actions by



allegedly not fulfilling its alleged obligations under the alleged contract. The Complaint contains no allegations to support the application of North Carolina law or providing a basis for jurisdiction in North Carolina. The Complaint does not allege the applicability of any North Carolina long-arm statute nor does it allege any facts that the Defendants have had "minimum contacts" in North Carolina sufficient to support a finding of jurisdiction in North Carolina – nor could it since such facts do not exist. To the contrary, the allegations of the Complaint and the facts in the affidavit of Warner clearly establish that the Defendants have not had sufficient minimum contacts with the State of North Carolina. Thus, as more fully set forth below, the Complaint must be dismissed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Background

2. In the Complaint, Plaintiff alleges that in October 2002 it "discussed" a possible business arrangement but that there was no time to negotiate the terms of that arrangement. The Complaint then alleges that in February 2003 the Plaintiff exchanged emails with Defendant Warner, a citizen and resident of Trinidad & Tobago, regarding a possible consulting arrangement regarding the non-U.S. broadcast rights of certain international soccer matches that were to occur outside North Carolina and the United States.[1] This alleged exchange of emails did not result in a written contract.

3. There is no indication that either party was present in the State of North Carolina when this exchange of emails took place. Clearly the Defendants were not in North Carolina at the time since the Defendants have never been to North Carolina. In

---

[1] In May 2003, one of these events, the 2003 Women's World Cup, was moved from China to the United States because of the SARS outbreak in China. Still no events of that competition were held in North Carolina.

addition, it is irrelevant whether the Plaintiff was in North Carolina at the time since the mere sending of mail (and presumably email) to someone who may receive it in North Carolina does not constitute "minimum contacts."

4. The Complaint then details how all actions purportedly in furtherance of the alleged agreement took place outside the state of North Carolina and outside the United States. For example, the Plaintiff asserts that Mr. Millen, the Plaintiff's president, traveled to Zurich, Switzerland and Port of Spain, Trinidad as part of negotiations with Infront and France and Finland to attend certain soccer matches. Again, no actions that occurred in North Carolina.

5. The Complaint does not, and cannot, assert that any aspect of the alleged agreement occurred or was to occur in North Carolina. None did.

6. Likewise, the Complaint does not, and cannot, allege that the Defendants have had minimum contacts with North Carolina. Such contacts do not exist.

7. Defendant Jack Warner is a citizen and resident of Trinidad & Tobago. Mr. Warner has never been to the state of North Carolina, maintains no assets in North Carolina, conducts no business in North Carolina and has otherwise never taken any actions to avail himself to the laws of the State of North Carolina. Mr. Warner's only contact with the State of North Carolina is that he may have caused payments to be mailed to the Plaintiff in North Carolina and it is possible that Plaintiff may have "opened" email correspondence from Mr. Warner while the Plaintiff was in the State of North Carolina.

8. CFU is an unincorporated non-profit association made up of the national football associations from the Caribbean countries that are members of FIFA, the world

governing body of soccer. The CFU's principal place of business is in Port of Spain, Trinidad. The CFU has no offices in North Carolina and has transacted no business in North Carolina.

9. J.D. International is a Cayman Corporation, and its principal place of business is in Port of Spain, Trinidad. J.D. International does not maintain offices and has not transacted any business in North Carolina.

10. Neither CFU nor J.D. International have had minimum contacts with the State of North Carolina. They have not solicited business or investors nor conducted business in North Carolina. They do not maintain checking or saving accounts in the state of North Carolina, nor do they maintain any business files in North Carolina. They do not maintain any street or post office box numbers in North Carolina nor do they advertise their services to the residents of North Carolina through television ads, mass mailings, local newspapers or local magazines.

North Carolina Long-Arm Statute Does Not Apply

11. A two-step analysis applies when determining whether a court may exercise in personam jurisdiction over a non-resident defendant. First, is there statutory authority that confers jurisdiction on the court? This is determined by looking at North Carolina's "long arm" statute. Second, if statutory authority confers in personam jurisdiction over the defendant, does the exercise of in personam jurisdiction violate the defendant's due process rights? *Corbin Russwin, Inc. v. Alexander Hdwe, Inc.* 147 N.C. App. 722 (2001); *citing: Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 675 (1977).

12. The determination of whether personal jurisdiction is statutorily and constitutionally permissible is a question of fact. *Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 27, 519 S.E.2d 317 (1999). The burden is on the Plaintiff to establish prima facie that one of the statutory grounds apply. *Stallings v. Hahn*, 99 N.C. App. 213, 215, 392 S.E.2d 632 (1990). Moreover, Plaintiff must demonstrate by a preponderance of the evidence that the acts of the Defendants placed them within the reach of North Carolina's long-arm statute. *Marshall Exports, Inc. v. Phillips*, 507 F.2d 47 (4th Cir. 1974.)

13. Here, no such evidence exists and the Plaintiff has failed to – and never can – meet that burden. Thus, there is no applicable long arm jurisdiction over Defendants Warner, CFU or J.D. International.

14. North Carolina General Statute section 1-75.4 sets forth the general grounds for personal jurisdiction. None of its provisions are applicable here. To wit, (1) none of the Defendants have a local presence or status in North Carolina; (2) the Plaintiff has not alleged any special jurisdictional statute; (3) none of the Defendants has engaged in an act or omission in North Carolina (4) the Defendants never solicited or conducted any services in North Carolina; (5) the Defendants never solicited the sale or sold and products in North Carolina; (6) the Defendants never promised to perform any services or to sell or deliver any products in North Carolina; (7) this case does not involve any property in North Carolina, personal or real; and finally, (8) it does not involve any of the actions or activities, things, or causes of actions outlined in paragraphs 7-12 of Section 1-75.4.

No Minimum Contacts

15.   In addition to there clearly being no basis for long-arm jurisdiction, the Defendants do not have "minimum contacts" with the State of North Carolina. To require the Defendants – who have never been to North Carolina, never done business in North Carolina and who never intended to avail themselves to the laws of North Carolina – to litigate this dispute in North Carolina simply because that is where the Plaintiff and its attorney are located and hope to have a "home court" advantage would offend the "traditional notions of fair play and substantial justice." See *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945).

16.   The Due Process Clause of the Fourteenth Amendment functions to limit a state's power to assert personal jurisdiction over non-resident defendants. *Hiwassee Stables, Inc*, 135 N.C. App. at 28, 519 S.E.2d 317. To exercise personal jurisdiction over a defendant, "minimum contacts" must be established between the ***defendant*** and the forum state. *Stallings*, 99 N.C. App. at 215, 392 S.E.2d 632 (emphasis added). These minimum contacts must be such that the exercise of personal jurisdiction does not offend the 'traditional notions of fair play and substantial justice.' *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Moreover, in determining "minimum contacts" it is only those contacts "actually generated by the defendant" that are to be considered. *Adams v. Jacobs*, (COA02-789 filed June 17, 2003), 581 S.E.2d 798 (2003).

17.   In order to satisfy the minimum contacts requirement, a Defendant must have purposefully availed itself of the privileges of conducting activities within the state, thus invoking the benefits and protection of its laws. *Hiwassee Stables, Inc.*, 135 N.C. App. at 28, 519 S.E.2d 317. The mere existence of a contract with a North Carolina

citizen or resident – which is greater than the contacts alleged in this matter – is not sufficient to establish requisite minimum contacts with North Carolina for this Court to have jurisdiction. *Farbman v. Esskay Mfg. Co*, 676 F.Supp. 666, 668 (W.D.N.C. 1987); *see also Phoenix Am. Corp. v. Brissey*, 46 N.C. App. 527, 532, 265 S.E.2d 476 (1980)(act of entering into contract with a resident does not provide the necessary minimum contacts with the forum state when all the elements of the defendant's performance are to occur outside of the state). The relationship must be one that the defendant would reasonably anticipate being haled into court there. *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365 (1986) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

18. The court weighs several factors in determining minimum contacts including: 1) the quantity of the contacts; 2) the quality of contacts, 3) the source and connection to the cause of action with those contacts, 4) the interest of the forum state; and 5) the convenience of the parties. *Stallings*, 99 N.C. App. at 215, 392 S.E.2d 632. The court must weigh these factors to determine what is fair and reasonable to both parties. *Haizlip v. MFI of South Carolina, Inc.* (COA02-1027 filed August 5, 2003), 583 S.E.2d 466 (2003).

19. In the present case, the factors clearly favor of the Defendants and a finding that sufficient minimum contacts do not exist. The Defendants never came to North Carolina to engage in contract negotiations, the Defendants never engaged in business in North Carolina, and the Defendants did not offer any services or sell any products in North Carolina. Furthermore the Defendants do not maintain checking or other monetary accounts in North Carolina, the Defendants do not maintain or store any

7

business files or documents in North Carolina, and Defendants do not register any stock in North Carolina.

20. <u>Quantity of Contacts.</u> In this matter, there have been no physical contacts in North Carolina. The Defendants have never met with the Plaintiff – or anyone else – in North Carolina. Any meetings or conferences between the Plaintiff and the Defendants occurred outside North Carolina, for example, as alleged in the Complaint, Plaintiff and Defendant, Jack Warner, meet in Zurich, Switzerland and Port of Spain, Trinidad. In addition, the Defendants have never engaged in business in North Carolina, have not solicited business or investors in North Carolina, never advertised in North Carolina, never traveled to North Carolina, did not maintain bank accounts in North Carolina, did not keep any business documents or files in North Carolina, all correspondence from Defendants came from outside North Carolina, and the subject matter of the alleged contract – the Caribbean broadcast rights for international soccer matches – was never intended to, and did not, occur in North Carolina.

21. The Defendants' only "contact" with North Carolina is that some reimbursement checks may have been mailed to the Plaintiff in North Carolina and it is possible that the Plaintiff may have "opened" emails from the Defendants while in North Carolina. North Carolina courts, however, have found that such tenuous contacts do not constitute sufficient minimum contacts to create jurisdiction. <u>See</u> *Corbin Russwin, Inc.*, 147 N.C. App. at 725, 556 S.E.2d 592 (defendant's mailing of four note payments to North Carolina did not rise to level of minimum contacts); <u>see also</u>, *Stallings v. Hahn*, 99 N.C. App. 213, 216, 392 S.E.2d 632 (1990) (defendants placement of an ad in a national magazine to solicit business, (b) telephone calls between plaintiff and defendant, and (c)

plaintiff sending defendant a cashier's check, not sufficient to establish minimum contacts for jurisdiction); *Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 31, 519 S.E.2d 317 (1999)(court held lack of sufficient minimum contacts, defendants did not purposefully avail themselves to the privilege of conducting activities in North Carolina and therefore no jurisdiction in North Carolina when plaintiffs made the initial contact with the defendants in Florida, the contract was performed in Florida, and none of the alleged acts of negligence occurred in North Carolina even though defendants forwarded a form and billing statement to plaintiffs in North Carolina, and received a check from the plaintiff mailed from North Carolina).

22. <u>Nature and quality of contacts.</u> As set forth above, the nature and quality of the Defendants' contacts with North Carolina is de minimus at most and certainly not of the nature or quality to support jurisdiction. The Defendants never availed themselves of the right to conduct business in North Carolina, the Defendants did not maintain an office or even post office box in North Carolina, all correspondence from Defendants originated outside of North Carolina, there was no written contract and any alleged negotiations did not take place in North Carolina.

23. <u>Source and connection of the cause of the action to the contacts.</u> Likewise, there is no source or connection between the Plaintiff's alleged cause of action to any acts by the Defendants related to North Carolina. In contract disputes, "the touchstone in ascertaining the strength of the connection between the cause of action and the defendant's contacts is whether the cause arises out of attempts by the ***defendant*** to benefit from the laws of the forum state by entering the market in the forum state." *Phoenix America Corp.*, 46 N.C. App. at 532, 265 S.E.2d 476 (quoting *Fieldcrest Mills,*

*Inc. v. Mohasco Corp.*, 442 F.Supp. 424 (M.D.N.C. 1977)(emphasis added); *See Cameron-Brown Co.*, 83 N.C. App. at 287, 350 S.E.2d 111 (not sufficient minimum contacts when plaintiff initiated contact, defendant sent payment to North Carolina but did not conduct any business activities in North Carolina, and did not attempt to claim protection of North Carolina's laws).

24. Here, the Plaintiff has not – and never could – establish that connection. As set forth in the Complaint all substantive acts took place in Europe or the Caribbean and not in North Carolina. The Defendants have never engaged in business in North Carolina and the television rights in question involve the Caribbean, not North Carolina. The Defendants did not take any action in an attempt to benefit from the laws of North Carolina. They do not maintain banking accounts in North Carolina, they do not maintain any offices in North Carolina, they did not pay taxes in North Carolina, they did not register any stock in North Carolina, they did not advertise in North Carolina nor did they hold meetings in North Carolina. In short, there is no connection between the Defendants and North Carolina.

25. <u>The interest of the forum state.</u> The Plaintiff has not provided any facts – other than the insufficient fact that the Plaintiff is a North Carolina corporation – to establish that North Carolina has any interest in exercising jurisdiction over this matter. Given the absence of minimum contacts between Defendants and North Carolina, the state's interest "cannot be asserted to override the mandates of due process." *Phoenix America Corp.*, 46 N.C. App. at 533, 265 S.E.2d 476. The state's interest does "not necessarily extend to the protection of those residents in all contractual relationships solicited outside its borders." *Cameron-Brown Co.*, 83 N.C. App. at 287, 350 S.E.2d 111.

26. Here, the Defendants did not solicit business in North Carolina. Defendants' only face-to-face meetings with Plaintiff occurred outside North Carolina in Zurich, Switzerland or Defendants own forum of Trinidad and Tobago. Defendants did not market or solicit the investment of any residents of North Carolina. The services provided by Defendant were entirely outside North Carolina. The Defendants do not have any assets in North Carolina.

27. <u>Convenience of the parties and location of the witnesses and evidence.</u> The convenience of the parties and the location of witnesses and evidence also support that jurisdiction rests in venues other than North Carolina. The only parties located in North Carolina are the Plaintiff and its attorney. The Defendants are located in Trinidad, as well as the majority of the witnesses, documents, officers and directors.

28. Thus, weighing the above factors, it is clear that the Defendants' have not had the constitutionally required "minimum contacts" with the State of North Carolina and to force the Defendants to litigate this matter in North Carolina would offend the traditional notions of fair play and substantial justice. Consequently, this Court should dismiss the Complaint for lack of jurisdiction.

WHEREFORE, for the reasons set forth above, the Defendants Motion to dismiss the Complaint should be granted.

Respectfully submitted,

By: /s/ Christian R. Troy
Christian R. Troy
TROY & WATSON, P.A.
301 McDowell Street
Suite 1014
Charlotte, North Carolina 28204
(704)334-8889
Attorney No.: 8064

John Collins
Collins & Collins
332 South Michigan Avenue
Suite 605
Chicago Illinois 60604
(312)663-4200

U.S. DISTRICT COURT FOR THE WESTERN
DISTRICT OF NORTH CAROLINA

FILED
CHARLOTTE, N.C.
2004 SEP -1 PM 2:34
U.S. DISTRICT COURT
W. DIST. OF N.C.

FC NUTMEG, INCORPORATED, d/b/a )
INTEGRITY SPORTS MARKETING, )
MEDIA & MANAGEMENT )
    Plaintiff, )
)
    v. )   Case No. 3:04-CV-359-H
)   JURY TRIAL DEMANDED
JACK WARNER, CARIBBEAN )
FOOTBALL UNION, J.D. )
INTERNATIONAL )
)
    Defendants. )

## AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS

PORT OF SPAIN
              SS.
TRINIDAD AND TOBAGO

    I, Jack Warner, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge:

1. I am a resident of Trinidad and Tobago. At no time was I a resident of North Carolina. I have never been to North Carolina.

2. I am the President of the Caribbean Football Union ("CFU") and an owner and officer of J.D. International.

3. CFU is an unincorporated non-profit association made up of the national football associations from the Caribbean countries that are members of FIFA, the world governing body of soccer. The CFU's principal place of business is in Port of Spain, Trinidad. The CFU has no offices in North Carolina and has transacted no business in North Carolina.

4. J.D. International is a Cayman corporation, and its principal place of business is in Port of Spain, Trinidad. J.D. International does not maintain offices and has not transacted any business in North Carolina.

5. My only interactions with the Plaintiff, FC Nutmeg, Incorporated, have been in my professional capacity as a representative of CFU or J.D. International.

6. All negotiations between the Plaintiff and CFU, and J.D. International were held outside of the state of North Carolina.

7. None of the Defendants have solicited investors or conducted business in North Carolina.

8. None of the Defendants maintain checking or saving accounts or any business records in the state of North Carolina.

9. None of the Defendants maintain any street or post office box numbers in North Carolina.

10. None of the Defendants have advertised their services to the residents of North Carolina through television ads, mass mailings, local newspapers or local magazines.

11. The numerous witnesses, including employees and business associates of the Defendants, are located outside the State of North Carolina. I am not aware of any purported witness that is located in North Carolina other than the plaintiff.

12. No aspect of the purported contract alleged by the Plaintiff was to have occurred in North Carolina. The subject matter of the alleged contract centered on the broadcast rights for international soccer matches that were to occur outside North Carolina (and generally the United States) and were to be broadcast in Caribbean countries outside of the United States. None of the subject matter of the alleged contract occurred in North Carolina.

13. Affiant never intended to avail himself, or to take any actions on behalf of the CFU or J.D. International to avail those entities, to the laws of the State of North Carolina.

Executed on this ___ day of _____, 2004

_____
Jack Warner