

U.S. DISTRICT COURT FOR THE WESTERN
DISTRICT OF NORTH CAROLINA
No. 3:04 CV 359-H

FC NUTMEG, INCORPORATED, d/b/a )
INTEGRITY SPORTS MARKETING, )
MEDIA & MANAGEMENT )
      Plaintiff, )
 )
v. )
 ) JURY TRIAL DEMANDED
JACK WARNER, CARIBBEAN )
FOOTBALL UNION, J.D. )
INTERNATIONAL )
 )
      Defendants. )

**DEFENDANTS' MEMORANDUM IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURUSANT TO RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

The Defendants, Jack Warner (hereinafter "Warner") Caribbean Football Union (hereinafter "CFU") and J.D. International, by and through their attorneys, John P. Collins of the law offices COLLINS & COLLINS, and Christian R. Troy of the law offices of TROY & WATSON respectfully submit this memorandum in reply to Plaintiff's response to their Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Summary

On or about April 19, 2004, the Plaintiff, FC Nutmeg Incorporated ("FC Nutmeg") filed a complaint (the "Complaint") alleging that Warner, CFU and JD International (collectively, the "Defendants") (a) breached an alleged agreement between the Plaintiff and Defendants and (b) engaged in unfair and deceptive trade actions by

1

allegedly not fulfilling its alleged obligations under the alleged "contract." The Defendants, who have neither been to, nor have had minimum contacts with, State of North Carolina moved to dismiss the Complaint for lack of personal jurisdiction. The plaintiff then filed its memorandum in opposition of the motion (the "Plaintiff's Brief").

Although quite lengthy – approximately 50 pages including exhibits – the Plaintiff's Brief provides no basis for denying the Defendants' Motion to Dimiss. Rather than focus on the **_Defendants_**' actions – the correct legal standard – the Plaintiff's Brief attempts to obfuscate the issue by extensively listing the **_Plaintiff's_** actions. See *Adams v. Jacobs*, (COA02-789 filed June 17, 2003), 581 S.E.2d 198 (2003)(in determining minimum contacts, it is only those contacts "actually generated by the defendant" that are to be considered); see also *CFA Medical, Inc. v. Burkhalter, 95 N.C. App. 391, 395, 383 S.E. 2d 214 (1989)*(which party initiates the contact is taken to be a critical factor in assessing whether a non-resident defendant is subject to personal jurisdiction); Cf. *Marshall Exports, inc. v. Phillips, 507 F.2d 47 (4th Cir. 1974)* (Plaintiff must prove by a preponderance of the evidence that the _acts of the Defendants_ placed them within the reach of North Carolina's long arm statute)(emphasis added). The extremely few acts by the Defendants referenced in the Plaintiff's Brief (an email, a fax, and a couple of checks paid to a North Carolina bank) are essentially the same miniscule contacts acknowledged in the Motion, which demonstrated that those actions did not constitute "minimum contacts" as a matter of law.

## North Carolina Long Arm Statute Does Not Apply

Plaintiff devotes a considerable amount of the Plaintiff's Brief to arguing that North Carolina's long arm statute applies. North Carolina's long arm statute, however,

does not – nor could it – trump the United States Constitutional requirement of "minimum contacts." See *Tejal Vyas, LLC and Dr. P.K. Vyas v. Carriage Park Limited Partnership, Vilas Development Corp., Ganesan Vishvabharthy, and Stonesan Vishvabharty, COA03-1144, (filed September 7, 2004)* citing: *Better Business Forms, Inc., 120 N.C. App. 498 at 500, 462 S.E.2d 832 at 833*(A court must engage in a two-part inquiry to determine whether personal jurisdiction over a non-resident defendant is properly asserted; first, the court must determine whether North Carolina's long arm statute authorizes jurisdiction over the defendant and if so, the court must determine whether the court's exercise of jurisdiction over the defense is consistent with due process). As more fully set forth below and in the Defendants' Motion to Dismiss, the Defendants have not had minimum contacts with the State of North Carolina.

Moreover, once defendants have raised the issue of jurisdiction, the plaintiff bears the the burden of proving prima facie that a statutory basis for jurisdiction exists. *Cherry Bekaert & Holland v. Brown, 99 N.C. App. 626, 629-630, 394 S.E.2d 651, 654 (1990)* also *Marion v. Long, 72. N.C. App.585, 325 S.E. 2d 300.* Here, the Plaintiff has not – and cannot – meet that burden.

<u>Defendants Have Not Created Minimum Contacts</u>

Plaintiff's attempts (scant as they are) to allege in the Plaintiff's Brief that the Defendants by their own actions have created minimum contacts with the State of North Carolina fall far short of "minimum contacts" regardless of interpretation. For example, Plaintiff attempts to claim that the Defendants "solicited" FC Nutmeg to perform the alleged "contract" based upon Exhibit D to Millen's affidavit. A plain reading of that document, however, contradicts Plaintiff's characterization that it represents a

"solicitation" of the Plaintiff by the Defendant. First, it references a prior meeting between Mr. Millen and Mr. Warner that took place in Zurich, Switzerland (FIFA's office). Second, the first line, which states "Re the above referenced subject and the notes *you have so kindly supplied to me*.." clearly indicates that Mr. Warner was merely replying to an earlier communication from Mr. Millen. Millen's possible receipt of that email in North Carolina is irrelevant and does not constitute "minimum contacts." See *Corbin Russwin, Inc.*, 147 N.C. App. at 725, 556 S.E.2d 592 (defendant's mailing of four note payments to North Carolina did not rise to level of minimum contacts).

Similarly, Plaintiff's attempts to rely on Exhibit F to Millen's affidavit are unpersuasive. That document is a photocopy of a FIFA credential for Millen that Defendants, while in Trinidad, helped procure from FIFA, in Zurich, Switzerland, so Millen could attend a soccer competitions in France – hardly a display of minimum contacts in North Carolina.

Given these facts, it would strain credulity to believe the Plaintiff's position that an outside consultant seeking work (Plaintiff) never solicited business from, nor sold their purported business acumen to the Defendants in an attempt to encourage the Defendants to retain the Plaintiff's services. Reviewing the facts in the light most favorable to the plaintiff does not require the Court to abandon its common sense and change the world order to where the mouse now chases the cat. Thus, even if read in the light most favorable to the Plaintiff, Defendants did not a "solicit" the Plaintiffs.

Warner's International Consulting For internetsoccer.com
Does Not Constitute "Minimum Contacts"

Plaintiff further asserts that the Defendants' have had "minimum contacts" with North Carolina because Mr. Warner caused $95,000 to be sent from ***Trinidad*** to the

Plaintiff's bank account in North Carolina. (Millen Aff. at ¶12). A plaintiff's receipt of funds in North Carolina, however, does not constitute minimum contacts for a defendant. See Corbin Russwin, Inc., 147 N.C. App. at 725, 556 S.E.2d 592 (defendant's mailing of four note payments to North Carolina did not rise to level of minimum contacts).

Likewise, Plaintiff's allegation that Mr. Warner received funds from some other allegedly North Carolina corporation[1] does not constitute "minimum contacts." Mr. Warner was never present in North Carolina and his consulting work as alleged in Millen's affidavit consisted of contacting parties outside of North Carolina, such as FIFA which is based in Zurich, Switzerland. Moreover, the receipt of funds in Trinidad that were sent from North Carolina does not constitute minimum contacts. See *Tejal Vyas, LLC and Dr. P.K. Vyas v. Carriage Park Limited Partnership, Vilas Development Corp., Ganesan Vishvabharthy, and Stonesan Vishvabharty, COA03-1144, (filed September 7, 2004* (North Carolina LLC sending funds to Illinois corporation does not constitute minimum contacts).

Defendants Never Intend North Carolina Law or Jurisdiction to Apply

Plaintiff's attempts to assert that the alleged "contract" between Plaintiff and Defendants has such "substantial connection to North Carolina" to provide sufficient basis for *in personam* jurisdiction fall far short. The Plaintiff has not provided any basis to demonstrate that the Defendants (i) "puruposefully availed themselves of the

---

[1] Mr. Millen's affidavit is unclear with respect to internetsoccer.com, the other allegedly North Carolina corporation. In paragraph 4 of Mr. Millen's affidavit, he asserts that Mr. Warner was paid $64,000 by internetsoccer.com "over the course of 2000-2001." Paragraph 3 of Mr. Millen's affidavit, however, claims that his relationship started with Mr. Warner at some point in 2000 without specifying when in 2000. Paragraph 3 further states that in July 2000 the North Carolina company was sold to a company from the United Kingdom. It is unclear whether the North Carolina entity continued to exist after July 2000 and whether Mr. Warner's consulting agreement was with the UK entity.

privileges" of North Carolina, (ii) intended to "invoke the laws of [North Carolina]", or (iii) "reasonably anticipated being haled into court" in North Carolina. See *Tom Togs, Inc. v. Ben Elias Industries Corp.* 318 N.C. 361 at 367, 348 S.E. 2d at 786 (1986); see also *Phoenix America Corp.* quoting *Fieldcrest Mills, Inc. v. Mohasco Corp.* 442 F. Supp. 424, 428 (M.D. N.C. 1977)(in contact dispute cases "the touchstone in ascertaining the strength of the connection between the cause of action and the ***defendant's contacts*** is whether the cause arises out of ***attempts by the defendant to benefit from the laws of the forum state by entering the market in the forum state***")(emphasis added). To the contrary, the evidence indicates opposite; namely, that an alleged "contract" involving the Caribbean broadcast rights for soccer matches occurring outside United States where all material actions – negotiations with the rights holder, the soccer matches, the initiation of the broadcasts and the receipt of the broadcasts – where to occur outside North Carolina and outside the United States.[2]

Similarly, the Plaintiff's assertion that requiring the Defendants to litigate in North Carolina is of "no greater inconvenience" than requiring the Plaintiff to litigate in Trinidad seeks to turn the facts on their head. The Defendants never intended to travel to North Carolina for any reason and never intended to be subject to its laws. Meanwhile, the Plaintiff admits to having traveled to Trinidad in furtherance of the alleged contract (Complaint, ¶12), setting up "summit meetings" in Kingston, Jamaica, attending soccer competitions in Korea and France, and the subject matter of the alleged "contract" involved

---

[2] It should be noted that neither to the Complaint nor to the Plaintiff's Brief does the Plaintiff attach any documents indicating a written agreement between the parties despite the allegations contained in paragraphs 13-19 of the Complaint. Moreover, based on the allegations of the Complaint, even if the alleged "contract" had been reached by the parties – which it wasn't – it was incapable of being completed within one year and thus is void under the statute of frauds since never written.

the broadcast of international soccer competitions to the *Caribbean.* Clearly, the Plaintiff contemplated traveling to the Caribbean. It cannot now argue that it finds attempting to enforce its alleged agreement in Trinidad "inconvenient."

In short, the Plaintiff's Brief provides no factual basis that the Defendants have willfully availed themselves to the laws of North Carolina. The uncontroverted facts remain that the Defendants have had no physical contacts in North Carolina; the Defendants have never met with the Plaintiff – or anyone else – in North Carolina; any meetings or conferences between the Plaintiff and the Defendants occurred outside North Carolina, for example, in Switzerland, Trinidad, Jamaica and Korea; the Defendants never engaged in business in North Carolina, have not solicited business or investors in North Carolina, never advertised in North Carolina, never traveled to North Carolina, did not maintain bank accounts in North Carolina, did not keep any business documents or files in North Carolina, all correspondence from Defendants came from outside North Carolina, and the subject matter of the alleged contract – the Caribbean broadcast rights for international soccer – was never intended to, and did not, occur in North Carolina.

Defendants Are Not Alter Egos

In the Plaintiff's Brief, Plaintiff attempts to claim that the Defendants are alter egos of Warner because the Defendants did not expressly deny the erroneous allegation to that effect in the Complaint. Defendants' silence on this allegation, however, is not admission in any way but rather relates to the fact that Defendants have only entered a limited appearance in this matter for purposes of challenging jurisdiction. See F.R.Civ.P. Rule 12(b). If and when this case is filed in a court of competent jurisdiction, Defendants

will prove the fallacy of Plaintiff's allegations, including its fallacious assertion that the Defendants are alter egos of each other.

In sum, Plaintiff's Brief fails to provide sufficient allegations and facts to support the application of North Carolina law or provide a legally sound basis for the application of jurisdiction in North Carolina. To the contrary, the allegations of the Complaint, Plaintiff's Brief and the affidavits filed in support thereof clearly establish that the Defendants have not had sufficient minimum contacts with the State of North Carolina. Thus, as more fully set forth above, the Complaint must be dismissed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

WHEREFORE, for the reasons set forth above, the Defendants Motion to dismiss the Complaint should be granted.

Respectfully submitted,

By: /s/ Christian R. Troy
Christian R. Troy

Christian R. Troy
TROY & WATSON
301 McDowell Street
Suite 1014
Charlotte, North Carolina
(704)334-8889
Attorney No.:

John P. Collins
Collins & Collins
332 South Michigan Avenue, Suite 605
Chicago Illinois 60604
(312)663-4200

# CERTIFICATE OF SERVICE

I, Christian R. Troy, an attorney, hereby certify that on this date I served the forgoing **Defendants' Memorandum in Reply to Plaintiff's Response to Defendants' Motion to Dismiss Complaint for Lack of Personal Jurisdiction Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure** upon counsel of record by depositing a copy thereof in the United States mail in Charlotte, North Carolina, first class postage prepaid and addressed as follows:

M. Todd Sullivan
WOMBLE CARLYLE SANDRIDGE & RICE,
Post Office Box 831
Raleigh, North Carolina 27602

This the __12__ day of October, 2004.

TROY & WATSON

By: _____
Christian R. Troy
Attorney for Defendants

Christian R. Troy
301 South McDowell Street
Suite 1014
Charlotte, N.C. 18204
N.C. State Bar No. 8064

John Collins
Collins & Collins
332 South Michigan Avenue
Suite 605
Chicago Illinois 60604
(312)663-4200